UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| **JOSEPH M. MONEGAIN III,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 3:13 CV 55 |
| | ) |
| **SUPERINTENDENT,** | ) |
| | ) |
| Respondent. | ) |

## OPINION and ORDER

Joseph M. Monegain III, a *pro se* prisoner, filed a habeas petition pursuant to 28 U.S.C. § 2254 challenging a state conviction.[1] (DE # 1.) Pursuant to RULE 4 OF THE RULES GOVERNING SECTION 2254 CASES, the court is obligated to review the petition and dismiss it if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]" For the reasons stated below, the petition is dismissed without prejudice.

In deciding the petition, the court must presume the facts set forth by the state courts are correct, and it is Monegain's burden to rebut this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the facts underlying Monegain's conviction as follows:

> In February of 2008, Monegain was living with Carol McElfresh, who had been his girlfriend at one point. Also living in the home were Jessica

---

[1] Based on the supplement Monegain submitted, the court is satisfied that he is presently "in custody" as required by 28 U.S.C. § 2254, as he is serving a term of probation. (*See* DE # 3.)

Walpole and Larry Murray, who lived in the finished basement and paid McElfresh rent.

In the late afternoon of February 2, 2008, McElfresh asked Monegain to help her shovel snow, and "he just started going off," calling her obscene names. McElfresh took the $15 that he had given her for his rent, "put it down his tank top and said [she] want[ed][him] to leave and leave now. . . ." McElfresh turned and walked toward the bathroom; Monegain came after her, grabbed her, and threw her to the bathroom floor. After McElfresh rose and started to walk away, "he threw [her] down again" in the hallway. McElfresh lay on the floor, curled in a fetal position, and Monegain stood over her "yelling and cursing."

From the basement, Walpole had heard loud voices and sounds "like things were being thrown" around upstairs, and she went to investigate. Walpole saw Monegain standing over McElfresh and screaming at her. Walpole told Monegain to get away from McElfresh. Monegain "turned towards" Walpole, yelled at her, and as she started "walking backwards" toward the kitchen, he came after her. Monegain "pushed [Walpole] with both hands" against the stove, and she thrust a chair at Monegain to keep him away from her.

McElfresh got between Walpole and Monegain. Monegain grabbed McElfresh and threw her down again. Walpole grabbed a knife from the knife block on the stovetop. McElfresh got up and when Monegain threw her against a support beam, Walpole ran to the basement stairs—yelling to Murray to call the police.

As McElfresh arose from the floor, she saw Monegain "going to [her] bedroom, and . . . saying, 'I know; I'll show them; I'll get the gun.' " She saw him "heading to . . . the side of the bed" whereunder she kept her shotgun, and "crouch" down. McElfresh ran to her neighbor's house, and told "them to call 911 because somebody was getting a gun."

In the meantime, Walpole had run to the basement screaming that Monegain had hit her, and Murray called 911. Murray and Walpole remained in the basement, as the stairs were the only exit, while police responded to the call.

Peeping from the bottom of the stairs, Murray testified that he saw "the bottom of [Monegain's] legs standing at the top of the stairs" and "heard him breech the gun"; "yelling I'm going to kill you, m\*\*\*\*\*\* f\*\*\*\*\*\*, I'm going to blow your f\*\*\*\*\*\* heads off," . . . and that "if we crossed his path

> he was going to blow our f* * * * * * heads off, and then after that he was going to use the remainder of the shells to take out the troopers outside the house. . . ." Walpole testified that Monegain yelled that if she came upstairs, he had "something for you . . . [to] blow your head off," and ". . . call your boys; call your friends; do you want to see what I can do to ten state troopers" and that "he'd take care of all of them" and would "blow them all away."
>
> After the police arrived, Monegain remained inside the house for an extended period of time, but he finally exited the house and surrendered. Thereafter, police found a shotgun loaded with two live shells and five rounds in an attached bandolier on top of the bed in McElfresh's bedroom.

*Monegain v. State*, No. 71A03-0810-CR-521, slip op. at 1-2 (Ind. Ct. App. Apr. 22, 2009) (internal citations and footnote omitted).

Following a bench trial, Monegain was convicted of two counts of criminal confinement and one count of battery. *Id.* at 2. He was sentenced to an aggregate prison term of 10 years. (DE # 1 at 1.) He appealed, challenging the sufficiency of the evidence. *Monegain*, No. 71A03-0810-CR-521, at 1. The Indiana Court of Appeals affirmed in all respects. *Id.* at 3. Monegain did not seek review in the Indiana Supreme Court or the U.S. Supreme Court. (DE # 1 at 1.) On April 20, 2010, Monegain filed a *pro se* petition for post-conviction relief in the state trial court, alleging ineffective assistance of counsel and other claims. (*Id.* at 1-5.) At present, the petition remains pending. (*Id.* at 1, 3.)

In January 2012, Monegain filed a federal habeas petition challenging his conviction. *Monegain v. Superintendent*, No. 3:12-CV-10 (N.D. Ind. filed Jan. 9, 2012.) The petition was dismissed without prejudice for failure to exhaust available state court remedies. *Id.*, DE # 2. The court rejected Monegain's argument that he had experienced inordinate delay in the state post-conviction proceedings, such that he was entitled to

3

dispensation of the exhaustion requirement. *Id.* Monegain appealed, but the U.S. Court of Appeals for the Seventh Circuit denied his request for a certificate of appealability. *Id.*, DE # 15. In January 2013, Monegain returned to federal court with the present petition. (DE # 1 at 9.) He acknowledges that his state post-conviction petition remains pending, but argues that the court should waive the exhaustion requirement in his case. (*Id.* at 3-5.)

Monegain's petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before considering the merits, the court must ensure that the petitioner exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). As the Seventh Circuit has explained:

> Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus . . . is the duty to fairly present his federal claims to the state courts . . . . Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings. This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory.

*Lewis*, 390 F.3d at 1025-26 (internal citations and quotation marks omitted). Until exhaustion has occurred, federal habeas relief is unavailable. *Id.*

Here, Monegain acknowledges that he has not yet exhausted his state court remedies, but again argues that he should be excused from the exhaustion requirement. In rare instances, federal courts may dispense with the exhaustion requirement because excessive delay on the part of the state has led to injustice to the petitioner. *Granberry v. Greer*, 481 U.S. 129, 135-36 (1987); *Jackson v. Duckworth*, 112 F.3d 878, 881 (7th Cir. 1997). To qualify for this exception, the delay must be both "inordinate" and "unjustifiable." *Jackson*, 112 F.3d at 881. Thus, where a petition for post-conviction relief had "lain dormant" for more than three years, the Seventh Circuit found grounds to excuse the exhaustion requirement, unless the state could show that the delay was justified. *Lowe v. Duckworth*, 663 F.2d 42, 43 (7th Cir. 1981); *see also Jackson*, 112 F.3d at 878-79 (stating in *dicta* that state's failure to take any action on post-conviction petition for more than five years could provide grounds for excusing the exhaustion requirement).

Monegain's case does not fall into this exceptional category. Instead he filed his post-conviction petition less than three years ago. Since that time, he has amended his petition multiple times, and the court has ruled on various motions and entered an order setting briefing.[2] *Monegain*, No. 3:12-CV-10, DE # 1-2 at 2-4. Monegain has also sought various forms of relief in the state appellate courts, and those requests were

---

[2] Although Monegain complains that the trial court has not ruled on his motions under the time frame set forth in INDIANA TRIAL RULE 53.1, that Rule is expressly inapplicable to post-conviction proceedings. IND. TR. R. 53.1(B)(4).

5

ruled on as well.[3] *Id.,* DE # 1-2 at 5-21, 24-25. Although Monegain would obviously prefer that the case move more quickly, he has not experienced the type of excessive delay that would excuse his failure to exhaust.

Therefore, Monegain's petition is subject to dismissal. The court should consider staying rather than dismissing a habeas petition containing unexhausted claims when it would be too late for the petitioner to return to federal court, such that a dismissal would "effectively end any chance at federal habeas review." *Dolis v. Chambers*, 454 F.3d 721, 725 (2006). As was fully outlined in the order dismissing Monegain's prior petition, a stay is not warranted since he has sufficient time to return to federal court once the post-conviction proceedings have concluded. *See Monegain*, No. 3:12-CV-10, DE # 2 at 4-5. Accordingly the petition will be dismissed, but the dismissal will be without prejudice to Monegain's right to pursue federal habeas relief after he has exhausted all available state court remedies.

For these reasons, the petition (DE # 1) is **DISMISSED WITHOUT PREJUDICE** pursuant to RULE 4 OF THE RULES GOVERNING SECTION 2254 CASES.

**SO ORDERED.**

Date: March 8, 2013

                                                s/James T. Moody
                                                JUDGE JAMES T. MOODY
                                                UNITED STATES DISTRICT COURT

---

[3] Monegain filed two mandamus petitions in the Indiana Supreme Court which were found to be procedurally deficient and without merit. *Monegain v. St. Joseph Superior Court*, No. 71S00-1109-OR-554 (Ind. Sept. 12, 2011); *Monegain v. St. Joseph Superior Court*, No. 71S00-1102-OR-124 (Ind. Mar. 1, 2011). He also attempted, unsuccessfully, to file motions in his direct appeal, which had been closed for more than two years. *Monegain v. State*, No. 71A03-0810-CR-521 (Ind. Ct. App. July 28, 2011).